UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SIDNEY FORD EDWARDS, III,

Petitioner,

CASE NO. 2:17-CV-10357
v.                                          HONORABLE NANCY G. EDMUNDS

PAUL KLEE,

Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

## I.    Introduction

This is a *pro se* habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner Sidney Ford Edwards, III ("Petitioner") was convicted of conspiracy to manufacture methamphetamine, Mich. Comp. Laws § § 333.7401(2)(b)(I); Mich. Comp. Laws 750.157a, and four counts of maintaining a controlled substance laboratory involving methamphetamine, Mich. Comp. Laws  § 333.7401c(2)(f), following a jury trial in the Cheboygan County Circuit Court.  He was sentenced as a fourth habitual offender, Mich. Comp. Laws  § 769.12, to concurrent terms of 7 to 40 years imprisonment on those convictions in 2013.  In his petition, he raises claims concerning the jury instructions, the admission of hearsay, the effectiveness of trial counsel, and the validity of his sentence. For the reasons set forth, the Court denies habeas relief.  The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

## II.    Facts and Procedural History

Petitioner's convictions arise from his operation of a meth lab with others in a residential garage in Cheboygan, Michigan in 2013. The Michigan Court of Appeals described the underlying facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Detective Jon Supernault testified that the investigation that led to Edwards' charges started with a tip from an informant that Kristopher Ayotte and Sarah Burnett were gathering materials to manufacture methamphetamine. Supernault said the investigation into their purchases led the officers to Ayotte's garage. Detective Steve Seccia testified that when officers arrived at the site, Ayotte was actively "cooking" methamphetamine. Seccia said he observed a green Mountain Dew bottle that Ayotte was using as a gas generator. They also found other evidence of methamphetamine production, including clear tubing, household lye, lithium battery hulls, coffee filter, tinfoil, and charcoal lighter. Detective Jason Varoni testified that they found Liquid Lightning drain opener and Morton salt. Varoni said they also found two different gas generators, indicating that more than one person cooked methamphetamine.
>
> Burnett testified against Edwards at trial under a plea agreement. Although she testified that she did not see Edwards manufacture methamphetamine, Burnett's testimony implicated Edwards in the manufacture of methamphetamine along with Ayotte.

*People v. Edwards*, No. 318023, 2014 WL 7157616, *1 (Mich. Ct. App. Dec. 16, 2014) (unpublished) (footnote omitted).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims presented on habeas review. The court denied relief on those claims and affirmed Petitioner's convictions and sentences. *Id.* at *1-4. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which reversed in part and remanded the case to the trial court for a sentencing hearing pursuant to *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015), but denied leave

to appeal in all other respects. *People v. Edwards*, 498 Mich. 903, 870 N.W.2d 721 (2015). The State filed a petition for a writ of certiorari with the United States Supreme Court, which was dismissed. *Michigan v. Edwards*, _ U.S. _, 136 S. Ct. 1731 (2016). On remand, the state trial court declined to re-sentence Petitioner thereby reaffirming his sentences. *People v. Edwards*, No. 13-004860-FC, Register of Actions (Cheboygan Co. Cir. Ct. March 14, 2016).

Petitioner thereafter filed his federal habeas petition. He raises the following claims as grounds for relief:

I.   The trial court committed plain error by failing to give an accomplice cautionary instruction regarding Burnett's testimony which denied him the right to present a defense and to a properly-instructed jury.

II.  His convictions are based in part on inadmissible hearsay testimony from the detective.

III. He was denied the effective assistance of trial counsel by counsel's failure to object to hearsay and for not demanding a proper accomplice jury instruction.

IV.  Re-sentencing is required because his sentences were increased based on facts that were not found by a jury beyond a reasonable doubt.

Respondent has filed an answer to the habeas petition contending that it should be denied because the first two habeas claims are procedurally defaulted and all of the habeas claims lack merit.

## III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use

when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must

4

have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.;* *see also White v. Woodall*, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the

"realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, _ U.S. _, 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the

reasonableness of the state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Habeas review is also "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.    Discussion

### A.    Procedural Default

As an initial matter, Respondent contends that Petitioner's first two habeas claims are barred by procedural default. It is well-settled, however, that federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy:    "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the procedural default issues are complicated and intertwined with the substantive issues, particularly the ineffective assistance of counsel claim, and the substantive issues are easier to resolve. Consequently, the interests of judicial economy are best served by addressing the merits of Petitioner's habeas claims.

7

**B.    Merits**

### 1.    Jury Instruction Claim

Petitioner first asserts that he is entitled to habeas relief because the trial court failed to provide the jury with an instruction on accomplice testimony relative to Sarah Burnett's trial testimony. Petitioner claims that he was denied his right to a properly instructed jury and his right to present a defense.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Jones v. United States*, 527 U.S. 373, 391 (1999); *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996). The failure to give an instruction that is supported by the evidence does not automatically justify habeas relief – the failure to instruct must have rendered the trial fundamentally unfair. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. State law instructional errors rarely form the basis for federal habeas relief. *Estelle*, 502 U.S. at 71-72.

The right of an accused to present a defense has long been recognized as "fundamental element of due process." *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see*

*also Holmes v. South Carolina*, 547 U.S. 319, 329-31 (2006); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). A defendant's right to present a defense is not unlimited, however, and may be subject to "reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). For example, a defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissable under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)); *see also Holmes*, 547 U.S. at 326 (recognizing that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury"). In such cases, the question is not whether the jury would reach a different result, but whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *Chambers*, 410 U.S. at 302.

The Michigan Court of Appeals considered this claim on plain error review and denied relief. The court explained in relevant part:

> Absent a specific request, the trial court's failure to give an accomplice instruction does not require reversal when potential problems with an accomplice's credibility have been plainly presented to the jury. *People v. Reed*, 453 Mich. 685, 692–693; 556 NW2d 858 (1996). Here, Edwards' lawyer fully explored Burnett's credibility at trial. *Id.* at 692. His lawyer asked if the prosecutor and officers spoke to her "prior to today" about her testimony and she admitted that they had. Burnett indicated that it was part of her plea that she provide testimony in the case. Edwards' lawyer further attacked Burnett's credibility by cross-examining her about her past embezzlement conviction. And he made Burnett's credibility an issue in his closing argument.
>
> The trial court also generally informed the jury on how to discern witness credibility by telling it to consider any bias, prejudice, personal interest,

promise, threats, suggestions, special reasons to tell the truth or lie, or other influences that might have affected the witness' testimony. The court also told the jury that it may conclude that a witness lied and was free to accept none or part of a witness's testimony. These instructions were broad enough to cover concerns regarding accomplice cautionary testimony and sufficiently protected Edwards' rights. *People v. Perry*, 218 Mich. App 520, 526; 554 NW2d 362 (1996). Therefore, there was no plain error. *Carines*, 460 Mich. at 773.

*Edwards*, 2014 WL 7157616 at *1.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[1] First, a criminal defendant has no constitutional right to an accomplice witness instruction such that the failure of a state court to give the instruction does not provide a basis for granting habeas relief. *Scott v. Mitchell*, 209 F.3d 854, 883 (6th Cir.2000); *Takacs v. Engle*, 768 F.2d 122, 127 (6th Cir.1985); *Grant v. Rivers*, 920 F. Supp. 769, 783 (E.D. Mich.1996); *see also Young v. Trombly*, 435 F. App'x 499, 504 (6th Cir. 2011) (lack of specific accomplice jury instruction did not violate defendant's federal constitutional rights where the instructions as a whole informed the jury about the proper consideration of witness credibility); *Latimer v. Burt*, 98 F. App'x 427, 433 (6th Cir. 2004) ("the state trial court's failure to give specific instructions regarding accomplice and informant credibility would not have constituted reversible error even if this were the direct appeal of a federal case, so relief is certainly not appropriate on a petition for habeas corpus").

Second, the trial court properly instructed the jury on witness credibility, including the consideration of bias, prejudice, personal interest, promises, threats, and other factors that may influence a witness's testimony, and instructed the jury that it was free to believe

---

[1] The Court would reach the same result under a *de novo* standard of review.

10

none, all, or part of a witness's testimony. Such instructions were sufficient to convey to the jury their role in evaluating witness credibility. Petitioner fails to establish that the jury instructions, when considered as a whole, deprived him of a fundamentally fair trial.

Third, the lack of a jury instruction on accomplice testimony did not deny Petitioner the right to present a defense. Petitioner, through defense counsel, had the opportunity to cross-examine Sarah Burnett about her version of events, her cooperation with the authorities, and her credibility as a whole and to argue that she was not worthy of belief. Petitioner also had the opportunity to present evidence in support of his defense. The trial court's jury instructions, as given, simply did not infringe upon Petitioner's right to present a meaningful defense. Habeas relief is not warranted on this claim.

### 2. Admission of Hearsay Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting hearsay testimony by investigating detectives Jon Supernault and Jason Varoni. The Michigan Court of Appeals summarized the disputed testimony as follows:

> During the prosecutor's direct examination, Supernault testified that he heard Ayotte saying Edwards "had injected or booted" the methamphetamine. Supernault also said that Ayotte stated he and Edwards had a disagreement regarding adding water during the production of the methamphetamine. Varoni similarly testified that he heard Ayotte mention that Edwards told Ayotte that Edwards had "cooked" methamphetamine. These statements were inadmissible hearsay. The statements were made in court by the detectives, not by the declarant. Moreover, the statements were offered to prove defendant was guilty of making methamphetamine, as shown by the prosecution's closing argument.

*Edwards*, 2014 WL 7157616 at *2.

A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle*, 502 U.S. at 67–68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). An error in state procedure or evidentiary law does not rise to the level of federal constitutional claims warranting habeas relief, "unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals considered this claim on plain error review and denied relief. The court determined that the detectives' testimony was inadmissible hearsay under the Michigan Rules of Evidence, but concluded that any error in admitting testimony was harmless due to the significant evidence of guilt presented at trial. The court explained in part:

> Improperly admitted hearsay evidence is harmless when it is merely cumulative of other properly admitted evidence. *People v. Van Tassel* (On Remand), 197 Mich. App 653, 655; 496 NW2d 388 (1992). In this case, there was strong evidence of Edwards' guilt. Officers confirmed, through store records and videotapes, that Edwards and other members of the conspiracy purchased items used to manufacture methamphetamine at Wal–Mart and Walgreens. Specifically, at Wal–Mart, Edwards purchased Morton salt and Liquid Lightning, and Burnett bought pseudoephedrine. At Walgreens, Edwards purchased pseudoephedrine and cold packs. A Wal–Mart receipt, a recipe for methamphetamine, and clear tubing were found in a bedroom at Burnett's residence where Edwards was staying. Given the other evidence that was properly admitted, Edwards cannot

> establish that the admission of this testimony prejudiced his trial. *Carines*,
> 460 Mich. at 763.

*Edwards*, 2014 WL 7157616 at *2-3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[2]  First, to the extent that Petitioner asserts that the trial court erred in admitting the testimony under Michigan law, he merely alleges a violation of state law which does not justify federal habeas relief.  State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).  Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67-68.

Second, with regard to federal law, the admission of the evidence did not render Petitioner's trial fundamentally unfair.  While the trial court may have erred in admitting it, any such error was harmless.  For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-118 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit).  In this case, Burnett's testimony implicating Petitioner in the crimes, as well as the physical evidence of Burnett's and Petitioner's purchase of materials used in the

---

[2]The Court would reach the same result under a *de novo* standard of review.

13

production of methamphetamine, provided significant evidence of Petitioner's guilt at trial. Given such circumstances, the admission of hearsay evidence by the detectives did not have a substantial or injurious effect on the jury's verdict. Habeas relief is not warranted on this claim.

### 3. Ineffective Assistance of Trial Counsel Claim

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to request an accomplice testimony instruction and for failing to object to the admission of the hearsay testimony.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or a fair appeal. *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and, when applicable, to state appellate courts reviewing their performance. *Harrington*, 562 U.S. at 105.

The Michigan Court of Appeals considered this claim under the *Strickland* standard and denied relief. The court explained in relevant part:

> Regarding the jury instructions, Edwards argues that his lawyer should have requested an accomplice instruction and there was no possible strategic reason for this because the entire defense theory hinged on adequately challenging Burnett's credibility. Nevertheless, Edwards failed to rebut the presumption that his counsel's actions amounted to trial strategy. Edwards' position at trial was that Burnett's testimony was not trustworthy because she had a motive to lie. Although the trial court did not provide an accomplice instruction, the court gave the general instructions regarding assessing witness testimony, which provided criteria for evaluating the witnesses' credibility, including concerns such as bias, prejudice, and personal interest. Therefore, the value of the cautionary accomplice instruction would have been minimal, and Edwards' lawyer could reasonably

have concluded that the general instruction was adequate. Furthermore, an accomplice instruction would have also applied to Ayotte's testimony, which was beneficial to Edwards. Thus, his lawyer's performance did not fall below an objective standard of reasonableness.

Edwards has also not shown a reasonable probability that the result of the proceedings would have been different had his lawyer requested the instruction. The general instructions provided adequate guidance to the jury. In addition, the prosecution even acknowledged Burnett's credibility problems. Given the limited value of the instruction under the facts present here, any error would not warrant relief.

We agree, however, that Edwards' lawyer should have objected to the improper hearsay testimony. Nevertheless, for similar reasons, that error would not warrant relief. The statements could have been admitted as prior inconsistent statements after Ayotte testified and was afforded an opportunity to deny or explain the statements. *See* MRE 613(b). Furthermore, other properly admitted evidence was strong enough for the jury to convict notwithstanding the hearsay. Thus, Edwards cannot show that there was a reasonable probability that the outcome of the trial would have been different had counsel objected to the hearsay.

*Edwards*, 2014 WL 7157818 at *3-4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[3] Given the Michigan Court of Appeals' ruling and this Court's ruling that the underlying jury instruction claim lacks merit and that any error in admitting the hearsay evidence was harmless error, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct. Counsel cannot be deemed deficient for failing to make a meritless argument or a futile objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Moreover, Petitioner was not prejudiced

---

[3]The Court would reach the same result under a *de novo* standard of review.

by counsel's conduct given the significant evidence of guilt presented at trial. Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

### 4. Sentencing Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court sentenced him based upon facts which were neither admitted by him nor proven to the jury beyond a reasonable doubt. Petitioner cites *Alleyne v. United States*, 570 U.S. 99 (2013), in support of this claim.

A sentence imposed within the statutory limits is generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Claims which arise out of a state trial court's sentencing decision are not cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner's sentences are within the statutory maximums for his offenses and his fourth habitual offender status. *See* Mich. Comp. Laws §§ 750.333.7401(2)(b)(I); 750.157a, 333.7401c(2)(f); 769.12. Consequently, those sentences are insulated from habeas review absent a federal constitutional violation.

In this case, the Michigan Court of Appeals denied relief on this claim finding that *Alleyne* did not apply to Michigan's sentencing scheme. *See Edwards*, 2014 WL 7157616 at *4. The Michigan Supreme Court, however, remanded the case to the trial court for a determination on whether the court would have imposed a materially different sentence

under the sentencing procedure set forth in *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015) (which was decided during the pendency of Petitioner's appeal). *See Edwards*, 498 Mich. at 903. On remand, the trial court reaffirmed Petitioner's sentences. *See Edwards*, No. 13-004860-FC, Register of Actions.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[4] Petitioner's sentencing claim arises from the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004); and *Alleyne v. United States*, 570 U.S. 99 (2013). In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U .S. at 490. In *Blakely*, the Supreme Court clarified "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303. In *Alleyne*, the Supreme Court extended *Apprendi* to mandatory minimum sentences, ruling that any fact that increases a mandatory minimum sentence is an "element" of the offense that must be submitted to the jury and proven beyond a reasonable doubt. *Alleyne*, 570 U.S. at 107-08 (Thomas J., plurality opinion).

These cases, however, are inapplicable to the case at hand. Petitioner was sentenced to indeterminate sentences within the statutory limits for his convictions and those sentences do not include mandatory minimums. The Supreme Court's holding in

---

[4]The Court would reach the same result under a *de novo* standard of review.

*Alleyne* dealt with judge-found facts which raised the mandatory minimum sentence under a statute, not judge-found facts that trigger an increased guidelines range, *see United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014), which is what occurred in Petitioner's case. Unlike the laws at issue in *Apprendi* and *Alleyne*, the Michigan Sentencing Guidelines neither require nor allow a judge to impose a more severe sentence than was previously available. Rather, they merely guide a judge in exercising his or her sentencing discretion. *Id.*; *see also United States v. James*, 575 F. App'x 588, 595 (6th Cir. 2014) (collecting cases and noting that at least four post-*Alleyne* unanimous panels of the Sixth Circuit have "taken for granted that the rule of *Alleyne* applies only to mandatory minimum sentences"); *Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory statutory minimum [are] part of the substantive offense.' ... It said nothing about guidelines sentencing factors[.]"). The Sixth Circuit, in fact, has ruled that *Alleyne* did not decide whether judicial fact-finding under Michigan's indeterminate sentencing scheme violates the Sixth Amendment. *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013).

The Court is aware that the Michigan Supreme Court relied on the *Alleyne* decision in holding that Michigan's Sentencing Guidelines scheme violates the Sixth Amendment right to a jury trial in *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015). Petitioner, however, cannot rely on *Lockridge* to obtain federal habeas relief. A federal court may only grant habeas relief if it finds that the state court's decision was "'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the *Supreme Court of the United States'* or 'was based on an unreasonable

determination of the facts in light of the evidence that was presented in the State court proceeding.'" *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012) (quoting 28 U.S.C. § 2254(d))(emphasis added). *Lockridge* is a decision of the Michigan Supreme Court. The AEDPA standard of review found in 28 U.S.C. § 2254 (d)(1) prohibits the use of lower court decisions in determining whether a state court decision is contrary to, or an unreasonable application of, clearly established federal law. *Miller v. Straub*, 299 F.3d 570, 578-579 (6th Cir. 2002). "The Michigan Supreme Court's decision in *Lockridge* does not render the result 'clearly established' for purposes of habeas review." *Haller v. Campbell*, No. 16-CV-206, 2016 WL 1068744, *5 (W.D. Mich. March 18, 2016); *see also Matthis v. Stewart*, No. 16-CV-14292, 2017 WL 5903460, *8 (E.D. Mich. Nov. 30, 2017) (denying habeas relief on *Alleyne/Lockridge* sentencing claim); *Lott v. Haas*, No. 17-CV-13059, 2017 WL 5192349, *2-3 (E.D. Mich. Nov. 9, 2017) (same); *Grace v. Gidley*, No. 16-CV-14243, 2017 WL 2798391, *5-7 (E.D. Mich. June 28, 2017) (denying habeas relief on similar sentencing claim after *Lockridge* remand); *Cummings v. Campbell*, No. 17-CV-10523, 2017 WL 957688, *3 (E.D. Mich. March 13, 2017) (denying habeas relief on *Alleyne* claim challenging scoring of sentencing guidelines); *Perez v. Rivard*, No. 14-CV-12326, 2015 WL 3620426, *12 (E.D. Mich. June 9, 2015) (same).

Additionally, the Michigan Supreme Court's remand to the state trial court essentially rendered this issue moot because Petitioner was given relief on this claim – the opportunity for re-sentencing under the now discretionary state sentencing guidelines. Furthermore, the trial court's reaffirmation of Petitioner's sentence after the remand under *Lockridge* was based upon the trial court's discretion. "Facts that the trial court may have

found in support of its exercise of discretion do not implicate the Sixth Amendment." *Holder v. Jackson*, No. 17-CV-408, 2017 WL 3205762, *4 (W.D. Mich. July 28, 2017) (summarily dismissing habeas petition raising similar sentencing claim); *see also Wiggins v. Balcarcel*, No. 18-CV-10124, 2018 WL 659280, *5 (E.D. Mich. Feb. 1, 2018) (citing *Holder* and denying habeas relief on similar claim). Petitioner is not entitled to further relief in federal court.

Lastly, to the extent that Petitioner contests the state court's interpretation or application of state law as to his sentences, he is not entitled to relief. It is well-settled that state courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). Habeas relief is not warranted on this claim.

## V.     Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability ("COA") must issue. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A federal court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies relief on the merits, the substantial

showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In this case, Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the Court **DENIES** a COA.

Lastly, the Court finds that an appeal from this decision cannot be taken in good faith. Fed. R. App. P. 24(a). Accordingly, the Court **DENIES** Petitioner leave to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED**.

X _Nancy Edmunds_

NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

Dated: July 25, 2018